# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOSHUA J. OSBORNE,<br><br>               Plaintiff,<br>v.<br><br>MICHAEL MEISNER, SANDRA HAUTAMAKI, ANDREW WESNER, CHAD KELLER, MATTHEW FOCHS, SGT. RALLS, C.O. TIMMS, C.O. HEFT, C.O. JOHNSON, C.O. RODER, R.N. THOMPSON, R.N. BETTY HOOSEN, NURSE KLENKE, and C.O. SMITH,<br><br>               Defendants. | Case No. 17-CV-754-JPS<br><br><br><br><br><br>**ORDER** |

On July 6, 2017, the Court screened Plaintiff's original complaint. (Docket #9). The Court permitted Plaintiff to proceed on claims of inadequate conditions of confinement, medical malpractice, and deliberate indifference to his serious medical needs. *Id.* at 8. On July 21, 2017, the Court entered a scheduling order in this matter and afforded Plaintiff until August 18, 2017, to file an amended complaint if he chose to do so. (Docket #14). Plaintiff filed an amended complaint on August 9, 2017. (Docket #21). The Court now turns to screening that amended complaint.

As noted in the first screening order, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or portion thereof, if the prisoner has raised claims that are "frivolous or malicious," that fail to state

a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). All of the standards cited in the first screening order remain applicable here. (Docket #9 at 1–3).

Plaintiff's amended complaint largely tracks the allegations made in the original complaint, but it seeks to refine the facts and identify more of the actors involved. To ensure continuity in the narrative, the Court will largely repeat the narrative from the original screening order.

Plaintiff alleges that he was placed in the restricted housing unit ("RHU") on temporary lock-up ("TLU") status on September 7, 2016. (Docket #21 at 2). He was sent to the RHU pending investigation into a physical altercation in which he was involved. *Id.* When he arrived at the particular RHU cell to which he was assigned, he was told he would be put in a cell with another inmate and that he would sleep on the floor with a mattress. *Id.* He protested, claiming that he had to be single-celled due to his TLU status and that he wanted to avoid sleeping on the floor because it was dirty with dust and "black stuff." *Id.* He was told by Sgt. Ralls ("Ralls") that he would be tazed, issued a conduct report, and forced into the cell if he did not go in voluntarily. *Id.*

On September 22, 2016, Plaintiff asked to speak with the RHU sergeant, Matthew Fochs ("Fochs"). *Id.* Fochs did not respond. *Id.* He then asked to speak with the RHU captain, Andrew Wesner ("Wesner"), on September 24, 2016, but again he was ignored. *Id.* Next, on September 26, 2016, he contacted the prison deputy warden, Sandra Hautamaki ("Hautamaki"), about the "floor situation" and was told to follow the chain of command and contact officer Chad Keller ("Keller"), who also worked

in the RHU. *Id.* Keller likewise ignored Plaintiff's requests for aid, but Plaintiff does not say when he reached out to Keller. *Id.*

During his confinement in the RHU, Plaintiff claims that night after night as he slept, he was repeatedly bitten by bugs crawling up through the drain in the cell floor, which he slept next to. *See id.* The bug bites caused a severe rash all over his body. *Id.* at 2–3. The rash itched, burned while showering, and exuded puss. *Id.* Plaintiff reports that showering was so painful, he had to take "bird baths" by dabbing himself with his bedsheets, which were soaked with his cellmate's urine since he slept on the floor near the toilet. *Id.* at 3. Plaintiff asserts that during this time, he complained repeatedly about his cell conditions and his rash to C.O. Timms ("Timms"), C.O. Heft ("Heft"), C.O. Roder ("Roder"), C.O. Smith ("Smith"), and C.O. Johnson ("Johnson"), all of whom either directed him to contact the Health Services Unit ("HSU") or told him to "deal with it." *Id.* at 2.

Plaintiff submitted his two HSU requests about these conditions, one on September 24 and another on September 28, 2016. *Id.* Plaintiff contends that R.N. Betty Hoosen ("Hoosen") ignored the first request "for at least a week." *Id.* Plaintiff was eventually taken to the HSU on September 30, 2016, but he says he was not seen by medical staff and was simply told to come back later. *Id.* at 3. As for R.N. Klenke ("Klenke"), Plaintiff appears to claim that she ignored one or more of his HSU requests. *See id.* Likewise, R.N. Thompson ("Thompson") told Plaintiff she would call him back later because she was busy, but never did so. *Id.* Plaintiff asserts that he was thus never seen at all by medical personnel although he had properly submitted HSU requests. *Id.*

Plaintiff also filed an inmate grievance about the conditions of his cell. *Id.* (The original complaint dated the grievance September 26, 2016, but

the amended complaint no longer contains this detail.) He alleges that the complaint was dismissed by the complaint examiner and eventually reviewed by the prison warden, Michael Meisner ("Meisner"). *Id.* According to Plaintiff, no one ever came to investigate the conditions of his cell. *Id.*

As in his original complaint, Plaintiff raises the following legal claims: (1) inadequate conditions of confinement, in violation of the Eighth Amendment; (2) medical malpractice under Wisconsin state law; (3) deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. *Id.* at 4. He seeks declaratory judgment as well as compensatory and punitive damages. *Id.* at 5.

As explained in the first screening order, allegations like Plaintiff's suffice pass the low threshold set at the screening stage. First, being forced to sleep on a filthy, urine-soaked mattress on the floor, despite being bitten by bugs coming out of a floor drain each night, suffices to state a claim under the Eighth Amendment based on conditions of confinement. *See Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008); *Caroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Further, unlike his last complaint, Plaintiff now makes clear the Meisner was informed of the substandard conditions in his RHU cell and did nothing. At this early stage, allegations that Meisner personally knew of Plaintiff's plight overcome the usual presumption that supervisors are not liable for their employee's constitutional violations. *See Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, the conditions of confinement claim can now proceed against Meisner.

Second, having one's complaints be ignored and being completely denied medical care despite a body-covering rash and repeated requests for

aid states a claim for deliberate indifference to medical needs under the Eighth Amendment. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). It may be that the correctional officers were within their bounds to simply refer Plaintiff to the HSU with healthcare concerns, *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011), but the Court will not foreclose his claim against them at this juncture.

Finally, the Court finds that the medical malpractice claim can proceed against the nurse Defendants. *See Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). It should be remembered that although a constitutional claim arising from medical care can be levied against non-medical personnel, there is no authority supporting the idea that the correctional officers or their supervisors, including Meisner, could be held to the standard of care applicable in medical negligence cases. *See Wade v. Castillo*, 658 F. Supp. 2d 906, 919 (W.D. Wis. 2009) (noting that "Wisconsin law defines medical negligence as the failure of a medical professional to 'exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances'") (quoting *Sawyer v. Midelfort*, 595 N.W.2d 423, 435 (Wis. 1999)). Further, it is clear from Plaintiff's amended complaint that his medical malpractice claim is directed at medical personnel only. *See* (Docket #21 at 4). He makes no attempt to state a general negligence claim against the non-medical Defendants. *Cf. Zuege v. Knoch*, No. 09–cv–451–wmc, 2010 WL 3851994, at *6 (W.D. Wis. Sept. 29, 2010).

For the reasons stated above, Plaintiff will be permitted to proceed on the following claims: (1) inadequate conditions of confinement, in violation of the Eighth Amendment, against Defendants Meisner, Hautamaki, Fochs, Wesner, Keller, Ralls, Timms, Heft, Roder, Smith, and

Johnson; (2) medical malpractice under Wisconsin state law, against Defendants Hoosen, Klenke, and Thompson; and (3) deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against Defendants Hoosen, Klenke, Thompson, Meisner, Hautamaki, Fochs, Wesner, Keller, Ralls, Timms, Heft, Roder, Smith, and Johnson. 28 U.S.C. § 1915A(b).

Accordingly,

**IT IS ORDERED** that Plaintiff's amended complaint (Docket #21) shall be the operative complaint in this action;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's amended complaint and this order will be electronically sent to the Wisconsin Department of Justice for service on the previously unserved Defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, all Defendants shall file a responsive pleading to the amended complaint within sixty (60) days of receiving electronic notice of this order; and

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where the inmate is confined.

Dated at Milwaukee, Wisconsin, this 25th day of August, 2017.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge